**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| Victor R. Quarterman and ) | |
| Cynthia Quarterman, ) | |
| ) | C.A. No.: 2:13-cv-3552-PMD |
| Plaintiffs, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| Spirit Line Cruises, LLC; ) | |
| Stanley Steemer of Charleston, Inc.; ) | |
| The Harbor Company, LLC, in ) | |
| personam, and M/V Spirit of Carolina ) | |
| her engines, bowspirit, anchor, cables, ) | |
| chains, rigging, tackle, apparel, furniture, ) | |
| and all accessories hereunto belonging to ) | |
| her, in rem. ) | |
| ) | |
| Defendants. ) | |
| ) | |

This matter is before the Court on Spirit Line Cruises, LLC, the Harbor Company, LLC, and M/V Spirit of Carolina's[1] Motion for Summary Judgment (ECF No. 55), Motion in Limine to exclude John Smith as an expert witness (ECF No. 58), Motion in Limine to exclude post-deposition, new opinions of Curtis D. Haskins, M.D. (ECF No. 62), and Motion in Limine to exclude documents produced after the close of discovery (ECF No. 83). Also before the Court are Plaintiffs' Motion to Compel (ECF No. 64), Motion for a Negative Presumption (ECF No. 65), and Motion for Partial Summary Judgment (ECF No. 66),

**BACKGROUND**

This action arises out of an accident that occurred on February 15, 2011, when Victor Quarterman[2] was aboard the M/V Spirit of Carolina to address a problem with the vessel's sound

---

1. The Court will refer to these parties as "Spirit."

2. The Court will refer to Mr. Quarterman as the "Plaintiff."

system. That same day, Spirit replaced the liquor cabinet on the vessel and had its carpets cleaned by Defendant Stanley Steemer. Early that day, Spirit's crew members removed the liquor cabinet and placed it on the bow of the second deck of the vessel, where it remained without incident for most of the day. Later that day, Stanley Steemer employees arrived to clean the inside carpets of the second deck of the vessel. Around the time the Stanley Steemer employees arrived, Plaintiff was installing an outdoor speaker on the second deck of the vessel with his co-worker, Daniel Fox. The liquor cabinet was situated on the deck somewhere behind them, and an employee of Stanley Steemer was allegedly on the other side of the liquor cabinet. The cabinet then fell, allegedly striking Plaintiff and Fox. After the cabinet fell, Fox immediately sought medical care, while Plaintiff declined to do so.

## **PROCEDURAL HISTORY**

Spirit filed its Motion for Summary Judgment on October 20, 2015. Plaintiffs and Stanley Steemer filed their Responses in Opposition on November 20. Spirit did not file a reply. Next, on October 23, Spirit filed two Motions in Limine seeking to exclude John Smith as an expert witness and to exclude Dr. Curtis Haskins' new opinions. Plaintiffs filed their Responses in Opposition to both motions on November 20. Plaintiffs then filed a Motion for a Negative Presumption, a Motion to Compel, and a Motion for Partial Summary Judgment against Spirit on October 30. Spirit filed its Responses in Opposition to all three motions on November 30, and Plaintiffs filed a Reply for all three motions on December 10. Finally, Spirit filed a Motion in Limine on December 31, to which Plaintiffs responded on January 8, 2016. Accordingly, these matters are now ripe for consideration. The Court will address the summary judgment motions first. It will then address the remaining motions in the order in which they were filed.

*Cross-Motions for Summary Judgment*

## LEGAL STANDARD

To grant a motion for summary judgment, a court must find that "there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). The judge is not to weigh the evidence but rather must determine if there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). All evidence should be viewed in the light most favorable to the nonmoving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 124 (4th Cir. 1990). "[I]t is ultimately the nonmovant's burden to persuade [the court] that there is indeed a dispute of material fact. It must provide more than a scintilla of evidence—and not merely conclusory allegations or speculation—upon which a jury could properly find in its favor." *CoreTel Va., LLC v. Verizon Va., LLC*, 752 F.3d 364, 370 (4th Cir. 2014) (citations omitted). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991). Summary judgment is not "a disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual basis." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

## ANALYSIS

Spirit and Plaintiffs have both moved for summary judgment on the question of liability. The Court declines to grant summary judgment to either party. The Court finds there are genuine issues of material fact as to the cause of the accident and whether Spirit's storage of the cabinet on the deck was proper.[3] Accordingly, both Plaintiffs' and Spirit's motions are denied.

---

3.     Although the Court recognizes that Plaintiff initially felt Stanley Steemer was solely responsible for the accident, that relates to credibility rather than whether there is a genuine issue of material fact. *See Anderson*, 477 U.S. at 255 (stating that the court does not weigh credibility at the summary judgment stage).

3

*Spirit's Motion to Exclude John Smith*

## **LEGAL STANDARD**

The introduction and admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Evidence, which provides as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The party offering the expert witness testimony bears the burden of demonstrating "its admissibility by a preponderance of proof." *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001).

The Supreme Court has recognized that, under Rule 702, trial judges serve as gatekeepers to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). This "basic gatekeeping obligation" identified in *Daubert*, and now embraced by Rule 702, applies not only to scientific testimony but to all expert testimony. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999). The gatekeeping obligation, like other determinations of the admissibility of evidence, requires the trial judge to exercise an informed and broad discretion, "guided by the overarching criteria of relevance and reliability." *Oglesby v. Gen. Motors Corp.*, 190 F.3d 244, 250 (4th Cir. 1999). Although the trial court is granted broad discretion, *see Cooper*, 259 F.3d at 199; *United States v. Gastiaburo*, 16 F.3d 582, 589 (4th Cir. 1994), the rejection of proposed expert witness testimony is the exception rather than the rule, *see SMD Software, Inc. v. EMove,*

4

*Inc.*, 945 F. Supp. 2d 628, 634–35 (E.D.N.C. 2013) (citing Fed. R. Evid. 702 advisory committee's note (2000)); *see also United States v. Crisp*, 324 F.3d 261, 269–70 (4th Cir. 2003) ("The Supreme Court emphasized in *Daubert* that 'vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" (quoting *Daubert*, 509 U.S. at 596)).

Plaintiffs' expert witness, Mr. John Smith, has proffered his opinion as to vessel safety. Mr. Smith's expertise is derived from his personal knowledge and experience with vessels of all kinds, as well as from his business, which caters to marine insurance companies, banks, and vessel owners. As a part of that business, Mr. Smith performs vessel safety inspections. He "looks for unsafe conditions on vessels, which include unsecured items, vessel appurtenances, improperly stowed equipment, and equipment that can cause injury to people located on the vessels and the vessels themselves." (Pls.' Resp. Opp'n Defs.' Mot. Exclude John Smith Expert Witness, ECF No. 69, at 7.) The Court finds that Mr. Smith has the relevant expertise necessary to testify as an expert in the area of vessel safety. He has operated a wide variety of vessels in his personal and professional capacity, and he is employed as a marine surveyor whose business involves inspecting boats for unsafe conditions. Accordingly, the Court is satisfied that Mr. Smith has the requisite expertise. However, the Court must still determine whether his methods are reliable and whether his opinions are based on sufficient facts or data.

"Reliability is to be determined by the 'principles and methodology used by the expert.'" *Holesapple v. Barrett*, 5 F. App'x 177, 179 (4th Cir. 2001) (per curiam) (quoting *Daubert*, 509 U.S. at 594–95). Spirit asserts that Mr. Smith's failure to use any recognized data or standards, along with his reliance on common sense in the formation of his opinions, prevents his testimony

5

from being admissible. Mr. Smith's opinions are based on his experience, work history, the witnesses' testimony, and his inspection of the M/V Spirit of Carolina. He also relies on *Cargo Work*, a book by Captain L.G. Taylor on the care, handling, and carriage of cargoes. In forming his opinion, Mr. Smith consulted archived reports as to wind direction and strength on the date of the accident, along with NOAA tide charts. The Court finds that Mr. Smith's testimony is reliable and sees no need to exclude his opinions. Plaintiffs have shown that Mr. Smith's testimony is admissible under the *Daubert* and Rule 702 analysis. Mr. Smith based his opinions on reliable sources and, in conjunction with his experience, the Court concludes his opinions should not be excluded.

### *Spirit's Motion in Limine to Exclude New Opinions of Dr. Haskins, M.D.*

Spirit also seeks to exclude Dr. Curtis Haskins' opinion as to the cause of Plaintiff's injury. Plaintiffs designated Dr. Haskins as an expert witness. In their Rule 26(a)(2) disclosures, Plaintiffs' counsel stated that Dr. Haskins would testify about, among other things, the cause of Plaintiff's injury. Then, when Dr. Haskins was asked in his deposition on September 17, 2015, whether he had an opinion as to the cause of Plaintiff's injury, Dr. Haskins responded that he did not. A week later, Dr. Haskins wrote a letter "to whom it may concern," stating his opinion as to the cause of Plaintiff's injuries and as to the treatment and surgery Plaintiff needed in order to remedy his injuries. Plaintiffs' counsel e-mailed the letter to Spirit's counsel on September 25. Discovery closed five days later on September 30. Spirit seeks to exclude all of Dr. Haskins' opinions as to the cause of Plaintiff's injuries and the treatment Dr. Haskins recommended to remedy those injuries.

Spirit argues that Dr. Haskins' unsworn opinion letter should be excluded because it contradicts his prior testimony and Spirit's attorneys were not afforded an opportunity to re-

6

depose him as to those new opinions. However, Spirit fails to account for Plaintiffs' offer to reconvene Dr. Haskins' deposition in light of his changed opinion. Although the Court does not condone Dr. Haskins' remarkably quick change of position at the very end of discovery, there is no reason to exclude Dr. Haskins' opinion letter. However, in light of Dr. Haskins' new opinions, the Court will afford Spirit fifteen days in which to re-depose him as to those opinions.

*Plaintiffs' Motion to Compel*

## BACKGROUND

"In August of 2015, Plaintiffs sent subpoenas to [Spirit's] insurance carrier and its third-party claims investigator seeking information . . . concerning the claims files of Defendants' carrier and its third-party claims management company." (Defs.' Resp. Opp'n Pls.' Mot. Compel, ECF No. 75, at 1.) "Defendants filed motions to quash the subpoenas on 9/2/2015 [(ECF No. 51)] and 9/4/2015 [(ECF No. 52)]," asserting that "the subpoenas sought privileged information." (*Id.* at 1–2.) Defendants then produced "all non-privileged documents contained within [the carrier and the claims management company's] files with privilege logs delineating a description of all documents withheld for the privilege." (*Id.*) Those documents were produced with the associated privilege logs on October 27 and November 18. Plaintiffs filed their Motion to Compel on October 30, before the second production of documents. After the second production, Spirit's counsel inquired whether Plaintiffs intended to pursue their Motion. Plaintiffs' counsel replied, stating that he believed "Defendants should produce 1) a signed record custodian affidavit; 2) standard claim form(s) that all insurance companies and insurance agents use; and 3) Notes from both the adjuster and Nixon about their investigation of the claim and preserving the cabinet in question." (*Id.*) "Plaintiffs' counsel also asserts that documents 1 through 59 on [the carrier's] privilege log should be produced claiming that the anticipation of

7

litigation privilege is not applicable." (*Id.*)  "Defendants object to the production of these records on the basis that the documents were made in anticipation of litigation." (*Id.*)

## ANALYSIS

Plaintiffs' Motion is denied at this time.  "Local Civil Rule 7.02 provides that a moving party 'must confer with opposing counsel and attempt in good faith to resolve the matter contained in the motion' before filing a nondispositive motion." *Fort v. Leonard*, No. 7:05-cv-1028-HFF-WMC, 2006 WL 1487034, at *1 (D.S.C. May 26, 2006) (quoting Local Civil Rule 7.02 (D.S.C.)).  Here, Plaintiffs failed to include the required Local Civil Rule 7.02 certification. As detailed in an exhibit to Spirit's Response in Opposition, Plaintiffs and Spirit appear to have made some progress in negotiating a resolution to the present Motion.  However, their negotiation occurred **after** the filing of Plaintiffs' Motion.  Local Civil Rule 7.02 requires that the parties confer and attempt to resolve the motion **before** filing a nondispositive motion.  Local Civil Rule 7.02 was adopted to remedy this type of situation by having the parties attempt to agree amongst themselves to an appropriate resolution.  Here, Plaintiffs filed a vague motion to compel.[4]  The Court lauds the parties for attempting to resolve the contents of the present Motion after its filing, but it emphasizes that such negotiation must take place before calling upon the Court's time and resources.  Accordingly, Plaintiffs' Motion is denied at this time, with leave to re-file if necessary.[5]

---

4.    Plaintiffs did not include any specific arguments in support of their motion.  Additionally, after Spirit's second production, it is unclear what documents are still in dispute.

5.    The Court recognizes that the trial for this case is set for the week of February 22, 2016.  Although the Court hopes the parties will reach an agreement, the Court will make every effort to rule quickly should Plaintiffs re-file their motion.

8

*Plaintiffs' Motion for a Negative Presumption*

## BACKGROUND

Plaintiff's injuries were allegedly caused by a liquor cabinet being stored on the deck of the M/V Spirit of Carolina. At some point after the accident, the cabinet was lost. Plaintiffs seek to impose a negative presumption against Spirit because they had notice of Plaintiffs' claim and failed to preserve the cabinet as evidence.

## ANALYSIS

"Spoliation refers to the destruction or material alteration or to the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001). "The right to impose sanctions for spoliation arises from a court's inherent power to control the judicial process and litigation, but the power is limited to that necessary to redress conduct 'which abuses the judicial process.'" *Id.* (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991)). "'[T]he applicable sanction should be molded to serve the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine.'" *Id.* (quoting *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999)). "The duty to preserve material evidence arises not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation." *Id.* at 591 (citing *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998)). "Under the spoliation of evidence rule, an adverse inference may be drawn against a party who destroys relevant evidence." *Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 155 (4th Cir. 1995). "[A]n adverse inference is only permissible when there are facts to establish both the party's knowledge of relevance of the evidence at issue and its deliberate conduct resulting in the destruction of the evidence." *Id.* at 156.

Here, even assuming that Spirit had a duty to preserve the liquor cabinet, Plaintiffs have not shown that Spirit willfully lost or destroyed it. Although Plaintiffs have plenty of evidence demonstrating that Spirit had notice of Plaintiffs' claims early on, they have offered no evidence showing that Spirit willfully lost or destroyed the cabinet. The only evidence in the record as to the cabinet comes from Rick Mosteller and Wesley Tilton's depositions, where they testify as to opposite conclusions as to the cabinet's fate. Mosteller states that "he firmly believe[s] the cabinet was gone within a day of [the accident]." (Defs.' Resp. Opp'n Pls.' Mot. Negative Presumption, Ex. 3, Mosteller Dep., ECF No. 73-3, at 4.) Mosteller also stated that "we've never kept the cabinet to my knowledge," and his assistant manager confirmed that to him. (*Id.*) In contrast, Tilton states that if he recalls correctly, "[he] moved it to a storage unit on land on Patriot's Point property." (Pls.' Mot. Negative Presumption, Ex. 1, Tilton Dep., ECF No. 65-1, at 4.) Thus, the sum total of Plaintiffs' evidence as to a willful destruction or concealment of the cabinet is Spirit's inability to find the cabinet and Tilton's recollection that he thinks he moved it to a storage unit at Patriot's Point. The Court declines to grant Plaintiffs' Motion for a Negative Presumption on the basis of such limited evidence of willfulness. Although the Court recognizes the possibility that Spirit destroyed the cabinet, Spirit's explanation that they threw it away because they had no need for it is equally plausible, if not more so. Without more evidence of Spirit's willfulness, the Court declines to impose a negative presumption.

*Spirit's Motion in Limine*

**BACKGROUND**

Finally, Spirit also filed a Motion in Limine to exclude Brandon Espanoza from testifying at trial and to exclude all expert opinions and medical records produced after the discovery deadline. As to Spirit's first ground, Plaintiffs' pre-trial disclosures indicate that Plaintiffs do not

10

intend to call Mr. Espanoza at trial. Accordingly, Spirit's Motion is granted as to excluding Mr. Espanoza from testifying at trial.

Spirit's request to exclude all expert opinions and medical records produced after the discovery deadline focuses on two things. First, Spirit seeks to exclude a letter written by Dr. Haskins summarizing a conference held on October 12, 2015, between Dr. Haskins and Linda Westman, a life care planner. Plaintiffs' counsel produced the letter to Spirit on December 2, 2015. Second, Spirit seeks to exclude a letter from Dr. Kerri Kolehma as to her examination of Plaintiff on December 3, 2015. Discovery closed on September 30, 2015. Plaintiffs argue that these reports should not come as any surprise to Spirit, but that does not adequately address Plaintiffs' delay. Because Plaintiffs have failed to provide any justification for their late productions, they are barred from using that evidence at trial.

## CONCLUSION

For the foregoing reasons, it is **ORDERED** that both motions for summary judgment are **DENIED.**

It is further **ORDERED** that Spirit's Motion in Limine to Exclude John Smith is **DENIED.**

It is further **ORDERED** that Spirit's Motion in Limine to Exclude Dr. Haskins' new opinions is **DENIED.**

It is further **ORDERED** that Plaintiffs' Motion to Compel is **DENIED.**

It is further **ORDERED** that Plaintiffs' Motion for a Negative Presumption is **DENIED.**

It is further **ORDERED** that Spirit's Motion to in Limine is **GRANTED.**

**AND IT IS SO ORDERED.**

PATRICK MICHAEL DUFFY
United States District Judge

**February 1, 2016**
**Charleston, South Carolina**